OPINION
{¶ 1} Defendant-appellant, Joseph N. Dials ("appellant"), appeals from the October 7, 2004 judgment of the Franklin County Municipal Court, entered upon a jury verdict finding him guilty of operating a vehicle while under the influence of alcohol and/or drugs, and a finding of guilty by the trial court of failing to signal before changing course.
 {¶ 2} Appellant has set forth seven assignments of error for our review:
FIRST ASSIGNMENT OF ERROR:
THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION TO SUPPRESS ANY AND ALL EVIDENCE OBTAINED BY THE CITY OF COLUMBUS FOLLOWING HIS ARREST WHICH OCCURRED WITHOUT PROBABLE CAUSE.
SECOND ASSIGNMENT OF ERROR:
THE TRIAL COURT ERRED IN PERMITTING TESTIMONY ABOUT THE EFFORTS TO ADMINISTER A BREATH TEST USING AN UNATHORIZED PORTABLE BREATH TESTING INSTRUMENT, AND THE APPELLANT'S REFUSAL TO SUBMIT TO SUCH TESTING, WHICH DENIED APPELLANT A FAIR TRIAL AND DUE PROCESS OF LAW.
THIRD ASSIGNMENT OF ERROR:
THE TRIAL COURT ERRED IN PERMITTING THE CITY OF COLUMBUS TO DEFINE THE TERM IMPAIRMENT USING THE TESTIMONY OF OFFICER JAMES H. GILBERT, AND AS A RESULT DENIED APPELLANT A FAIR TRIAL AND DUE PROCESS OF LAW.
FOURTH ASSIGNMENT OF ERROR:
THE TRIAL COURT ERRED IN PERMITTING THE CITY OF COLUMBUS TO INTRODUCE TESTIMONY CONCERNING THE POSSIBLE BLOOD ALCOHOL CONTENT OF THE DEFENDANT, AND AS A RESULT DENIED APELLANT A FAIR TRIAL AND DUE PROCESS OF LAW.
FIFTH ASSIGNMENT OF ERROR:
THE TRIAL COURT ERRED IN REFUSING TO SUSTAIN APPELLANT'S MOTION FOR ACQUITTAL AT THE CONCLUSION OF THE CITY'S CASE WITH REGARD TO OPERATING A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF A DRUG OF ABUSE.
SIXTH ASSIGNMENT OF ERROR:
THE TRIAL COURT ERRED IN REFUSING TO GIVE THE JURY INSTRUCTION OFFERED BY APPELLANT EXPLAINING THE LAW WITH REGARD TO THE SEARCH OF APPELLANT'S MOTOR VEHICLE.
SEVENTH ASSIGNMENT OF ERROR:
THE JURY'S VERDICT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE, AND THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 3} We will address appellant's various assignments of error together when necessary for purposes of clarity. We begin with appellant's first assignment of error. On August 20, 2004, the trial court conducted a hearing to consider appellant's motion to suppress evidence including statements made by appellant as well as the observations and opinions of the arresting officers about the sobriety of appellant. In his motion to suppress, appellant asserted that there was no lawful cause for police to initiate contact with him or probable cause to arrest him without a warrant. He further asserted that the statements made by him were unlawfully taken from him while in police custody but prior to receiving warnings in conformity to Miranda v. Arizona (1966),384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.
 {¶ 4} In considering the first assignment of error, we will only take into account the evidence introduced at the suppression hearing. The following facts were therein adduced.
 {¶ 5} On April 10, 2004, at approximately 2:30 a.m., Officer Andrew Ward ("Ward"), of the Columbus Division of Police, observed appellant driving westbound on Livingston Avenue in Columbus, Ohio without illuminating his headlights. (Motion Hearing "MH" 4.) The area in which Ward observed the vehicle is known by the police to be a high crime area. (MH 48.) Ward shined the spotlight of the police cruiser at appellant in order to draw his attention to the fact that his headlights were not illuminated. (MH 4.) Ward testified that after shining the spotlight on appellant's vehicle, he heard appellant accelerate his vehicle and observed appellant weave around other vehicles as he continued westbound on Livingston Avenue. (MH 16.)
 {¶ 6} Ward stated that he turned on his overhead beacons and began to pursue appellant in order to initiate a traffic stop whereupon he observed appellant make a right hand turn onto Kimball Street without using any form of turning signal. (MH 10, 15.)
 {¶ 7} At the suppression hearing, Ward was asked by the City to explain his thought process on the evening of the incident when he saw appellant's vehicle without its headlights illuminated driving in that particular area. Ward stated:
Well, several things can go on. A lot of times once you steal a car, you know — it could have been a stolen car — they'll take off in it. A freshly stolen car. A lot of times we have drive-by shootings where an individual will drive down the road blacked out so nobody knows there's a vehicle coming down the road before they fire out on the road. Car jackings, I mean, people picking up prostitutes. I mean, a lot of things can go on.
(MH 10.)
 {¶ 8} Ward testified that appellant then pulled to the curb on Kimball Street. Ward pulled his cruiser to the curb behind appellant's vehicle, and as he was placing his cruiser in gear, he noticed appellant begin to exit his vehicle. (MH 10, 12.) Ward exited his cruiser, drew his firearm, and pointed it at appellant. (MH 24.) Ward testified that he told appellant, "Hey, turn around, * * * let me see your hands." (MH 12.) At the suppression hearing, Ward elaborated on the reasons why he took the actions that he did:
A. At that point, I just basically try to contain the situation. You know, in the past, whenever I stopped somebody, if they're immediately trying to exit, they're trying to exit for a reason.
[Mr. Beatty:] And what was that reason?
A. Either to flee away from the situation. You know, a lot of people don't have a license. They'll try to run so they don't get caught driving. A gun could be in the car, drugs could be in the car. You name it. Anything could happen.
(MH 11.)
 {¶ 9} As Ward was placing appellant in handcuffs, other police officers were arriving at the scene as Ward had previously called for backup. (MH 13.) Appellant complied with Ward's orders, and Ward placed appellant in the backseat of his cruiser. (MH 10, 13.) Asked why he detained appellant by placing him in handcuffs, Ward stated:
Well, he was detained because I didn't know the reason for him exiting or for the reason why the car didn't have lights on or sped away when I tried to, you know, shine my spotlight on him. I didn't know if I had a stolen car, he was a suspect out of something or not, so at that point in time when he immediately tried to exit the vehicle, I wanted to detain him until I could find out what was up with the car.
(MH 12.)
 {¶ 10} Because Ward was in close proximity to appellant while he was handcuffing him and placing him in the backseat of the cruiser, Ward stated that he noted appellant "smelled like alcohol." (MH 13.) After Ward handcuffed appellant and placed appellant in the backseat of the cruiser, Ward returned to appellant's vehicle to get appellant's passenger, Cinnamon Woodfork ("Woodfork"), out of the vehicle. (MH 13.)
 {¶ 11} Among the first of the responding police officers was Officer James Gilbert ("Gilbert"). (MH 50.) Gilbert testified at the suppression hearing that Ward indicated to him when he arrived that Ward "smelled an odor of alcoholic beverage off of [appellant] right now." (MH 50.) Gilbert further testified that "Ward had stated, `Right now I do know that he's probably 35.' That's the police term for * * * an impaired driver." (MH 51.) Gilbert then began conversing with other responding police officers and with Woodfork, who was being questioned by other responding officers. (MH 51.) After determining that there were no other individuals at the scene other than Woodfork, Gilbert walked to the back of Ward's cruiser and opened the rear door in order to talk to appellant, who was still handcuffed. (MH 51.)
 {¶ 12} Gilbert testified that he has received highly specialized training on the detection of persons under the influence of alcohol, including a week-long seminar that resulted in his certification as a specialist in alcohol detection. (MH 40.) Additionally, Gilbert testified that he is a field training officer, which is a person that has been designated by police leadership as an officer who is a leader among fellow officers and a role model to police cadets. (MH 40.) Gilbert stated that in his capacity as a field training officer, he assists in advanced training for police cadets during OVI week ("operating a vehicle under the influence" week) at the police academy. (MH 41.) Gilbert also testified that in his eight years with the Columbus Division of Police, he has observed numerous individuals under the influence of alcohol or drugs. (MH 38, 43.)
 {¶ 13} Gilbert testified that he immediately could smell an odor of alcohol coming from appellant. (MH 52.) He also noticed that appellant was profusely sweating. (MH 53.) Gilbert testified that appellant was overwhelmingly belligerent during the course of his encounter with appellant. (MH 54, 55.) Gilbert further testified that based on his training and experience, belligerence often indicates that an individual is intoxicated. Gilbert stated at the suppression hearing that, "[S]omething in his system is altering him to be belligerent towards the police, and he's not being a reasonable person." (MH 55-56.) When asked at the suppression hearing upon what basis he relied to make his determination of probable cause, Gilbert stated that he noticed that appellant's eyes were bloodshot and glassy, his speech was slurred, and that spittle was dribbling from his mouth. (MH 60.) Gilbert further noticed that appellant would trail off and he would become incomprehensible at the end of each statement. (MH 60.)
 {¶ 14} Gilbert testified that he told appellant, "I'd like to have you step out of the vehicle. We're going to put you through some field sobriety tests. I believe you had too much to drink tonight to be driving." (MH 57.) Gilbert stated, "[H]e declined [the field sobriety tests]. And based on his state of mind, his being belligerent towards me, it then — you know, I — you know, based on my officer safety, I really don't think it would be — if a person is acting like that and they're handcuffed it's in the best interest of my safety and the other officer's [sic] safety if they're unhandcuffed and start to do field sobriety tests." (MH 57.) Gilbert then offered appellant the opportunity to take a portable breath test, but appellant refused. (MH 57.) Based on appellant's conduct, the officers did not offer appellant any further opportunities to take field sobriety tests.
 {¶ 15} Gilbert testified that based on the information relayed from Ward, Gilbert's own observations, appellant's belligerent behavior and his refusal to take field sobriety tests or a portable breath test, Gilbert decided to arrest appellant for operating a vehicle under the influence of alcohol or drugs. (MH 61.)
 {¶ 16} At the suppression hearing, only Ward and Gilbert testified on behalf of the City. Appellant did not call any witnesses on his behalf. The trial court issued a written entry denying appellant's motion to suppress.
 {¶ 17} In considering appellant's first assignment of error, we note that "appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact." State v.Featherstone, 150 Ohio App.3d 24, 2002-Ohio-6028 778 N.E.2d 1124, at ¶ 10. As the trier of fact, the trial court must weigh the evidence and determine the credibility of witnesses. On appeal, we must accept the trial court's findings of fact if they are supported by competent credible evidence. State v. Brooks (1996), 75 Ohio St.3d 148, 154,661 N.E.2d 1030.
 {¶ 18} However, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether the established facts met the appropriate legal standard. Ornelas v. UnitedStates (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911. Therefore, we must first independently determine whether the facts meet the appropriate legal standard regarding the existence of reasonable suspicion, without deference to the trial court's conclusion. State v.Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; State v.Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; State v.Guysinger (1993), 86 Ohio App.3d 592, 594, 621 N.E.2d 726.
 {¶ 19} Appellant has challenged the basis upon which his vehicle was stopped. Columbus City Code 2137.02 states in relevant part:
(a) Every vehicle upon a street or highway during the time from sunset to sunrise * * * shall display lighted lights and illuminating devices as required by this chapter for different classes of vehicles; * * *.
(b) Whoever violates this section is guilty of a minor misdemeanor.
 {¶ 20} Additionally, Columbus City Code 2131.14 states in relevant part as follows:
(a) No person shall turn a vehicle or move right or left upon a street or highway unless and until such person has exercised due care to ascertain that the movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided. When required, a signal of intention to turn or move right or left shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning. No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give a signal. Any stop or turn signal required by this section shall be given either by means of the hand and arm, or by signal lights that clearly indicate to both approaching and following traffic intention to turn or move right or left, * * *.
(b) Except as otherwise provided in this division, whoever violates this section is guilty of a minor misdemeanor.
 {¶ 21} A law enforcement officer may stop an individual when he has reasonable suspicion that criminal activity is afoot. Terry v. Ohio
(1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed2d 889; State v. Lloyd (1998),126 Ohio App.3d 95, 102, 709 N.E.2d 913. Reasonable suspicion exists in traffic stops where a police officer has observed a traffic violation. Consequently, traffic stops based on observation by a police officer of a traffic violation are constitutionally permissible. Daytonv. Erickson (1996), 76 Ohio St.3d 3, 11-12, 655 N.E.2d 1091 ([W]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, the stop is constitutionally valid). Here, Ward testified that he observed appellant turn onto Kimball Avenue without using his turn signal, in violation of Columbus City Code 2131.14. Additionally, Ward testified that he observed appellant operating his vehicle without lit headlights, in violation of Columbus City Code 2137.02. We find, therefore, that the traffic stop of appellant was constitutionally valid as the observations of Ward gave rise to articulable suspicion to stop appellant.
 {¶ 22} At this point, however, the purpose of the stop changed because of the continuing interactions between the police officers and appellant. Since we have established that Ward permissibly initiated a traffic stop, we must now turn to another analysis to determine the legitimacy of the rest of the encounter with appellant. As part of that analysis, we must determine whether the conduct of the officers in further investigating appellant constituted an investigatory stop. The Supreme Court of Ohio held in State v. Freeman (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044, paragraph one of the syllabus, that "[t]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." See, also, State v. Williams (1990), 51 Ohio St.3d 58, 554 N.E.2d 108;Columbus v. Wright, Franklin App. No. 03AP-421, 2004-Ohio-188; State v.Homan (2000), 89 Ohio St.3d 421, 732 N.E.2d 952. In considering the totality of the circumstances, we will examine each of the aspects leading up to the arrest of appellant.
 {¶ 23} Appellant asserts that he was unlawfully arrested at the point when Ward pulled his firearm and pointed it at appellant, handcuffed appellant, and placed appellant in the back of the cruiser. He further asserts that this arrest was not supported by probable cause. We disagree, and find that appellant was not unlawfully arrested.
 {¶ 24} Use of a firearm during an investigatory stop may be permissible if the force is reasonable. See Wells v. Akron (1987),42 Ohio App.3d 148, 150, 537 N.E.2d 229. ("Such reasonable force may include the use of a drawn weapon."); see, also, State v. Gaston (1996),110 Ohio App.3d 835, 842, 675 N.E.2d 526. In determining whether the use of force was reasonable, it is necessary for us to consider the totality of the circumstance surrounding the drawing of the weapon. Id. See, also, State v. Harrington (June 1, 1994), Montgomery App. No. 14146 ("The use of force, such as a drawn gun by police officers, does not automatically convert an investigatory stop into an arrest."); U.S. v.Lane (C.A. 6, 1990), 909 F.2d 895, 899.
 {¶ 25} Ward's testimony indicates that appellant was already exiting his vehicle even before Ward was able to exit his cruiser. Since Ward testified that he told appellant, "Hey, turn around, * * * let me see your hands," it is reasonable to infer that Ward could not see the front of appellant, thus creating a potentially dangerous situation because the officer could not see the activities of appellant. According to Ward, he was concerned that appellant would flee or was armed. (MH 12.) Ward testified that this is the reason that he pulled his firearm and aimed it at appellant.
 {¶ 26} The U.S. Supreme Court stated that "it would be unreasonable to require police officers take unnecessary risks in the performance of their duties." Terry, supra, at 24. We also believe that under appropriate, reasonable circumstances, it is preferable that an officer takes the necessary steps to contain a situation in which he feels his safety is at issue before the danger unexpectedly confronts the officer. "[It] would appear to be clearly unreasonable to deny the officer the power to take necessary measures to * * * to neutralize the threat of physical harm." Id. When Ward drew his weapon on appellant, he utilized reasonable force to control the situation given his past experiences with individuals immediately exiting a vehicle, the concern for his safety, the time of night, and the location of the traffic stop. See Wells,
supra, at 57; see, also, State v. Bobo (1988), 37 Ohio St.3d 177, 179,524 N.E.2d 489 (the training and experience of an officer are valid factors in determining what conduct is reasonable under the circumstances).
 {¶ 27} Both police officers testified at the suppression hearing that in their experience, when a vehicle is being operated with blacked out headlights typically indicates that the motorist has just committed a more serious crime. (MH 11.) Additionally, the officers' testimony indicated that the area around Livingston Avenue and Kimball Avenue is known as a high-crime area with a high incidence of drug-related activity, gun violence, and prostitution. (MH 10.) Further, Ward testified that when appellant immediately exited the vehicle, it appeared to Ward that appellant may be attempting to flee the scene, or may pose a threat to Ward's safety. (MH 12.)
 {¶ 28} Because Ward had articulable suspicion to conduct the traffic stop, and because of the specific circumstances surrounding the environment at the scene as well as the actions of appellant himself, we conclude that Ward did not subject appellant to an unlawful seizure when Ward pulled his firearm and aimed it at appellant.
 {¶ 29} Appellant also argues that when Ward handcuffed and placed appellant in the back seat of the police cruiser, Ward subjected him to an unlawful arrest. The fact that appellant was briefly restrained does not rise to the level of a full arrest. As we stated in State v. Schultz
(1985) 23 Ohio App.3d 130, 491 N.E.2d 735, paragraph three of the syllabus, the investigation "by the police of an individual who is under temporary restraint * * * constitutes an intermediate level of police-citizen interaction, which is often referred to as `investigative detention,' and such questioning does not invoke the panoply of Fourth Amendment protections." In Schultz, we determined that a balancing test was appropriate to weigh the important interests of police officers with relatively minimal invasion of privacy concerns for a defendant. In the case now before us, appellant was placed in handcuffs and in the backseat of the cruiser because (1) the police officer observed appellant's vehicle without its headlights activated (MH 4.), (2) the area around the scene was known for its high crime (MH 10.), (3) it appeared to Ward that appellant was attempting to flee as the police officer exited his cruiser (MH 12.), (4) there were two occupants in appellant's vehicle (MH 13.), and (5) it was late at night (MH 4.).
 {¶ 30} Additionally, we note that there is no evidence indicating that appellant's person was searched after he was placed in handcuffs. It appears that the restraint and detection was necessarily brief while the police officers completed their investigation, which ultimately resulted in the arrest of appellant. We therefore distinguish the case now before us from the facts in State v. Lozada (2001), 92 Ohio St.3d 74,748 N.E.2d 520, a case upon which appellant relies.
 {¶ 31} In Lozada, a state highway patrol trooper observed a vehicle speeding, and after stopping the vehicle asked the driver to exit it. The trooper intended on placing the driver in the backseat of his cruiser while he conducted the traffic stop as it was the trooper's personal practice for reasons of convenience. In the process of patting down the driver, the trooper discovered contraband. The Supreme Court of Ohio determined that "it is reasonable for an officer to search the driver before placing the driver in a patrol car, if placing the driver in the patrol car during the investigation prevents officers or the driver from being subjected to a dangerous condition and placing the driver in the patrol car is the least intrusive means to avoid the dangerous condition." Id., paragraph one of the syllabus.
 {¶ 32} The Supreme Court of Ohio concluded that the central issue inLozada was whether it was reasonable to search the driver for weapons before placing him in the patrol car. See Lozada, supra, at 75. Here, the central issue is not a search of appellant prior to being placed in the cruiser, but rather appellant being placed in the cruiser based on the concerns for the safety of the officer. The motivation of Ward was not to search appellant for contraband drugs or weapons, but instead to control the situation that Ward objectively perceived as dangerous for a variety of reasons.
 {¶ 33} Weighing these factors together, we find that appellant was not under arrest when Officer Ward handcuffed and placed appellant in the cruiser because Officer Ward already had articulable suspicion to restrain appellant, because the brief detention was necessary for the officer's safety as the neighborhood was known to be dangerous, and because the invasion of appellant's privacy was negligible. See Schultz,
at 134. Considering the circumstances surrounding the police officer's initial stop of appellant, the officer's use of his firearm, and the handcuffing and detention of appellant in the police officer's cruiser, we find appellant was not unlawfully arrested either when Officer Ward aimed his firearm at appellant, nor when he was handcuffed and placed in the cruiser. See Freeman, supra, paragraph one of the syllabus.
 {¶ 34} Finally, because the officers had continuing lawful contact in the detention of appellant, probable cause eventually sufficiently emerged to support a full arrest of appellant. The circumstances here are similar to the circumstances in State v. Lofton (Aug. 8, 1985), Franklin App. No. 84AP-408. In Lofton, the detaining officer received a report on his radio that two individuals were running from other police officers, along with their description. Based on that information, the officer observed two individuals fitting the description. The officer detained Lofton, and after searching him for weapons, handcuffed him and placed him in the backseat of his cruiser. While the defendant was detained, the officer continued his investigation, eventually discovering goods that the defendant had stolen but discarded while fleeing. Finally, the victims of the robbery were eventually brought to the detaining officer's cruiser by other police officers and were able to identify the defendant as one of the individuals that had robbed their store. After considering the totality of the circumstances, we determined that the detention was reasonable. We noted that "the surrounding circumstances were not static but, rather, each investigatory stage revealed additional information justifying further detention of defendant." Id.
 {¶ 35} In the case sub judice, probable cause also developed in stages. See Lofton, supra. After Officer Ward initiated a traffic stop and placed appellant in investigative detention, both Officers Ward and Gilbert continued to observe appellant, inquired as to whether he was drinking earlier in the evening, and determined that because of his bloodshot and glassy eyes, his profuse sweating, the strong odor of alcohol, his slurred and incoherent speech, and his belligerence toward the officers, that probable cause existed in which the officers could arrest appellant. (MH 61.)
 {¶ 36} We therefore determine that appellant was lawfully arrested with probable cause, that the motion to suppress statements appellant made before his arrest and before being advised of his Miranda rights was properly denied, and that the observations made by the officers were properly admissible. See Miranda, supra; Whren v. United States (1996),517 U.S. 806, 819, 116 S.Ct. 1769, 135 L.Ed.2d 89; see, also, Lofton,
supra. In making this determination we also hold that appellant was merely being investigated by the police officers until he was formally arrested by Gilbert. Berkemer v. McCarty (1984), 468 U.S. 420, 442,104 S.Ct. 3138, 82 L.Ed.2d 317. Thus, the statements appellant made to the police officers before the formal arrest of the appellant were not in violation of Miranda, and were properly admissible against him. Id.
 {¶ 37} Based on our above analysis, we overrule appellant's first assignment of error.
 {¶ 38} In considering the balance of appellant's assignments of error, we note that the testimony at trial was substantially similar to the testimony given at the suppression hearing with the addition of the following relevant facts adduced at trial.
 {¶ 39} Following the arrest made by Officer Gilbert, appellant was transported to the Franklin County jail in Ward's cruiser, while Gilbert followed behind. Gilbert testified that appellant remained verbally abusive as he exited Ward's cruiser and was escorted into the jail for processing. (Tr. 237.) Based on his observations of appellant sweating and having a flush face, Gilbert determined that he wanted appellant to take a urine test at the station because he believed that appellant may have been under the influence of a drug of abuse. (Tr. 239-240.) Gilbert recited the warnings and consequences from the Bureau of Motor Vehicles Administrative License Suspension form ("BMV 2255"). Then Gilbert asked appellant to submit to a chemical test in the form of testing his urine, however, appellant again refused. (Tr. 244, 247.) Gilbert added the charge for operating a vehicle under the influence of alcohol or drugs to the uniform traffic ticket that Ward had already completed for the charges for failing to illuminate headlights and failing to properly use turn signals. (Tr. 249.)
 {¶ 40} At trial, appellant did not testify, and called one witness on his behalf, Woodfork, to recount her version of the incident. She testified that she believed that appellant was using his headlights on the night of the incident, and that she did not believe appellant to be under the influence of alcohol or drugs while operating his vehicle. (Tr. 383, 390.) She testified that the police officers used "excessive force" and when Ward was placing appellant in handcuffs, that he thrust appellant against the vehicle, and told him to "shut up." (Tr. 397, 398.)
 {¶ 41} On June 21, 2004, following their deliberations, the jury found appellant guilty of operating a vehicle under the influence. In a bench trial, appellant was found guilty of failing to signal before changing course and was acquitted of a charge for failing to operate lighted lights.
 {¶ 42} We next consider appellant's second assignment of error. Appellant asserts that the trial court erred when it permitted the City to introduce Officer Gilbert's testimony that appellant refused to submit to a portable breath test.
 {¶ 43} At trial, the following testimony was heard by the jury:
[Officer Gilbert]: I walked over to my cruiser, retrieved my PBT [portable breath test] walked back over to where [appellant] was at, tried calming him down, again, and was offering the PBT for him to give me an in-the-field sample.
[MR. MINNILLO]: Same objection, Your Honor, with regard to that, if you —
[THE COURT]: Overruled.
* * *
[MR. BEATTY]: Okay. Are [portable breath tests] enough to legally say for sure if he was over the legal limit?
[OFFICER GILBERT]: No.
[MR. BEATTY]: So what are they admissible for?
[OFFICER GILBERT]: For developing my probable cause. It's just one extra thing added onto the probable cause.
[MR. BEATTY]: So you offered the PBT to Mr. Dials?
[OFFICER GILBERT]: Correct.
[MR. BEATTY]: What was his response to your offer?
[OFFICER GILBERT]: "F____ you. I'm not taking it. I'm going to get paid out of this, " you know, "this is bull____, man," you know, "I know and you know me," and it just continued on.
(Tr. 229-230.)
 {¶ 44} In City of Maumee v. Anistik (1994), 69 Ohio St.3d 339,632 N.E.2d 497, the Supreme Court of Ohio addressed the issue of the admissibility of a refusal of a portable breath test. The Supreme Court of Ohio determined that "under certain circumstances, evidence of a refusal to submit to a chemical test can be used against a defendant at trial."[1] Id. at 342, citing Columbus v. Mullins (1954),162 Ohio St. 419; Westerville v. Cunningham (1968), 15 Ohio St.2d 121, 122,239 N.E.2d 41, 44 O.O.2d (Emphasis omitted.)
 {¶ 45} The Court further explained that:
Where a defendant is being accused of intoxication and is not intoxicated, the taking of a reasonably reliable chemical test for intoxication should establish that he is not intoxicated. On the other hand, if he is not intoxicated * * * such a test will provide evidence for him; but, if he is intoxicated, the test will provide evidence against him. Thus, it is reasonable to infer that a refusal to take such test indicates the defendant's fear of the results of the test and his consciousness of guilt, especially where he is asked his reason for such refusal and he gives no reason which would indicate that his refusal had no relation to such consciousness of guilt.
Maumee at 343, quoting Westerville at 122.
 {¶ 46} In the case before us, the issue of whether appellant refused to take a portable breath test and the potential reasons why appellant may have refused the test is a relevant issue to be heard by a trier of fact. See State v. Marsh, Belmont App. No. 04 BE 18, 2005-Ohio-4690 at ¶ 44. Because appellant's refusal is probative of his consciousness of guilt, it was entirely proper for the jury to hear testimony from Gilbert regarding appellant's refusal. Therefore, appellant's second assignment of error is overruled.
 {¶ 47} We next consider appellant's third assignment of error. Appellant asserts that the trial court committed reversible error when it allowed Gilbert to define the term "impairment."
 {¶ 48} Over the objection of appellant, the City offered the following opinion of Gilbert as to the meaning of the term impairment:
Officer Gilbert: Impairment is my ability to take everything into consideration as far as somebody's actions and somebody's availability to operate a vehicle.
(Tr. 346-348.)
 {¶ 49} Appellant argues that the trial court, in permitting the City to allow Officer Gilbert to define "impairment," unfairly prejudiced appellant.
 {¶ 50} However, we find that the definition did not prejudice appellant because the trial court cured any error with the definition when it gave the jury its instructions. See State v. Jones (2000),90 Ohio St.3d 403, 413, 39 N.E.2d 300. The trial court properly defined "under the influence," and accurately conveyed to the jury what it could consider in making its determination of whether appellant was in fact "under the influence." By properly defining "under the influence" the trial court remedied any confusion with Gilbert's definition of "impairment." The trial court instructed the jury that it must accept the instructions as they are given, and that they may not change the law, apply what they think the law is, or apply what they think the law ought to be. "Juries are presumed to follow the court's instructions, including instructions to disregard testimony." Jones, at 413, citing State v.Zuern (1987), 32 Ohio St.3d 56, 61, 512 N.E.2d 585.
 {¶ 51} Accordingly, we find that the definition did not prejudice appellant, and therefore appellant's third assignment of error is overruled.
 {¶ 52} In appellant's fourth assignment of error, appellant challenges the testimony of Officer Gilbert regarding the officer's written Alcohol/Drug Influence Report, and argues that the probative value was substantially outweighed by the danger that the jury would infer, based on the information contained in the report, that appellant would have been shown to have a high concentration of blood alcohol if he had taken a chemical test.
 {¶ 53} The Alcohol Influence Report completed by Officer Gilbert contained Gilbert's observations of appellant, completed at the scene.[2]
Therein, Gilbert stated that appellant's clothing appeared "disarranged;" that the odor of alcoholic beverage was "very strong;" that appellant's behavior was "uncooperative," "combative," "erratic/changeable," "insulting," and "profane"; that appellant's speech was "slurred," and "mumbled"; and that appellant "swayed." Additionally, the report stated that appellant refused the portable breath test, and also refused the field sobriety tests. Additionally, the jury heard the following on redirect examination:
[MR. BEATTY]: Have you ever had an OVI arrest where you checked everything on that form?
* * *
[OFFICER GILBERT]: No.
[MR. BEATTY]: If you think of the highest test you've ever seen, on that defendant, was every box checked?
[MR. MINNILLO]: Objection.
THE COURT: Overruled. You may answer.
[OFFICER GILBERT]: No.
(Tr. 344-345.)
 {¶ 54} The City asserts that that the purpose of the question was asked to rebut questions asked by appellant on cross-examination regarding boxes that were or were not checked on the Alcohol Influence Report. Additionally, the City asserts that the question was asked to show that a person might be under the influence of alcohol even if not every box on the form is checked.
 {¶ 55} With respect to the testimony regarding the alcohol influence report, we note that since evidentiary rulings are within the broad discretion of the trial court, we are limited in our review on appeal to reverse only for an abuse of discretion which amounts to prejudicial error. See Columbus v. Crouch (Aug. 12, 1997), Franklin App. No. 97APC01-75, citing State v. Graham (1979), 58 Ohio St.2d 350, 12O.O.3d 317, 390 N.E.2d 805.
 {¶ 56} In the instant case, Officer Gilbert testified that, during the traffic stops he has effectuated throughout his career, he has never indicated the presence of every observable condition on the form for an individual that later tested for a high blood alcohol content. This testimony was proffered to indicate that a person could be under the influence of alcohol yet not exhibit all of the conditions indicated on the form. Officer Gilbert's testimony was not prejudicial because it was both based on his past experiences and was proffered by the City on re-direct examination to rebut questions asked by appellant during cross-examination. Because the testimony was not prejudicial, the trial court did not abuse its discretion. See Crouch, supra, citing State v.Moine (1991), 72 Ohio App.3d 584, 595 N.E.2d 524. Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 57} We now address the balance of appellant's assignments of error out of order because of the similarities of the issues presented therein. In appellant's sixth assignment of error, appellant has asserted that the trial court erred by declining to instruct the jury on the law regarding the search of appellant's vehicle in the manner specifically proposed by appellant.
 {¶ 58} We initially note that "[i]t is within the sound discretion of a trial court to refuse to admit proposed jury instructions which are either redundant or immaterial to the case." Bostic v. Connor (1988),37 Ohio St.3d 144, 524 N.E.2d 881, paragraph two of the syllabus. Thus, the proper standard of review for an appellate court is "whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and the circumstances of the case."State v. Smith, Franklin App. No. 01AP-848, 2002-Ohio-1479, citing Statev. Wolons (1989), 44 Ohio St.3d 64, 68, 541 N.E.2d 443.
 {¶ 59} Appellant's proposed jury instruction stated:
Evidence has been introduced about the search of the motor vehicle operated by Mr. Dials on April 10, 2004. It is lawful for a police officer to search the passenger compartment of an automobile when the police officer has made a lawful custodial arrest of the occupant, and the search of the motor vehicle is a contemporaneous incident of that arrest. State v. Murrell (2002), 94 Ohio St.3d 489, 2002-Ohio-1483,764 N.E.2d 986.
 {¶ 60} Based on the facts and circumstances of the case, we find that appellant's proposed jury instruction was immaterial to the case. As discussed above, the trial court had already determined as a matter of law that appellant was lawfully arrested. The search of appellant's vehicle was a lawful search incident to arrest. See New York v. Belton
(1981), 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768; United States v.Mans (C.A. 6, 1993), 999 F.2d 966 (defendant placed in the backseat of the police cruiser while search of defendant's vehicle conducted). Thus, the jury was not called upon to determine whether the police made a lawful arrest of the occupant, or whether the subsequent search of appellant's vehicle was also lawful, so it did not need to be instructed regarding the search. Those issues are matters of law to be determined by the trial court, which it properly did following the suppression hearing.
 {¶ 61} Because we find that appellant's proposed jury instruction was immaterial to the case, we also find that the trial court did not abuse its discretion in not granting appellant's requested jury instruction. Appellant's sixth assignment of error is overruled.
 {¶ 62} Finally, we turn to appellant's fifth and seventh assignments of error. Because they are interrelated, we address them together. In his fifth assignment of error, appellant asserts that the trial court erred in denying his Crim.R. 29(A) motion for acquittal on the charge of operating a motor vehicle under the influence of alcohol or a drug of abuse, which challenged the sufficiency of the evidence prior to the jury's verdict. In his seventh assignment of error, appellant argues that the verdicts are unsupported by the sufficiency of the evidence, and are against the manifest weight of the evidence.
 {¶ 63} We begin with appellant's challenges to the sufficiency of the evidence. The role of an appellate court presented with such a challenge has been established by the Supreme Court of Ohio in State v. Jenks
(1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781,61 L.Ed.2d 560.
 {¶ 64} However, whether the evidence is legally sufficient is a question of law, not fact. State v. Thompkins (1997), 78 Ohio St.3d 380,386, 678 N.E.2d 541. An appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts" in determining whether the evidence is, in fact, sufficient. Jackson, supra, at 319. The weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 80, 24 O.O.3d 150, 434 N.E.2d 1356. Thus, a jury verdict will not be disturbed on the sufficiency of the evidence unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh (2001), 90 Ohio St.3d 460, 484, 739 N.E.2d 749;Jenks, supra.
 {¶ 65} As discussed above, appellant was charged with failing to signal before changing course, a minor misdemeanor in violation of Columbus City Code 2131.14. The offense was tried to the court, and appellant was found guilty. Additionally, appellant was charged with operating a vehicle under the influence, which is a misdemeanor of the first degree. Columbus City Code 2133.01 states:
(A) No person shall operate any vehicle within this City, if, at the time of the operation, any of the following apply:
(1) The person is under the influence of alcohol, a drug of abuse, or a combination of them.
The charge was tried to a jury, which returned a verdict of guilty. Appellant argues that there was not sufficient evidence introduced at trial to prove that he failed to signal before changing course or that he operated a vehicle under the influence. We disagree.
 {¶ 66} At trial, Officer Ward testified that appellant failed to signal to change lanes while driving westbound on Livingston Avenue. (Tr. 41.) Additionally, Ward testified that appellant failed to signal when he turned right onto Kimball Avenue. (Tr. 43.) Officer Ward also testified that he noticed the smell of alcohol on appellant's breath as appellant was talking to Ward as Ward was handcuffing him. (Tr. 58.) Ward stated that the hostile behavior of appellant towards Ward indicated that appellant may be under the influence of alcohol or drugs. (Tr. 60.) Officer Gilbert testified that upon his first contact with appellant, he immediately could smell an odor of alcohol coming off of appellant, and as appellant spoke, the odor became stronger. (Tr. 220.) Gilbert stated that he also noted that appellant was sweating profusely, and became more agitated as his contact with appellant continued. (Tr. 221.) Gilbert further testified that he asked appellant if appellant had been drinking that evening, but appellant refused to answer. (Tr. 224.) Gilbert stated that he formulated his basis for the charge of driving under the influence upon his detection of an odor of alcohol, his observations of appellant's bloodshot and glassy eyes, his profuse perspiration, and that the fact that he was agitated and uncooperative. (Tr. 231.)
 {¶ 67} Based on the above testimony, there is sufficient evidence upon which the court could reasonably conclude that appellant failed to signal before changing course, and the jury could conclude that appellant operated a vehicle under the influence. Treesh, supra, at 484; State v.Blosser (Mar. 30, 2000), Franklin App. No. 99AP-816, (traffic violations, odor of alcohol, slurred speech, refusal to submit to field sobriety tests are indicia of driving impaired). Viewing the evidence in a light most favorable to the City, the evidence introduced at trial was sufficient to support appellant's convictions.
 {¶ 68} Appellant has asserted that the court erred in failing to grant his motion to acquit pursuant to Crim.R. 29(A) on the charge of driving under the influence because the City failed to present evidence that appellant was operating a vehicle under the influence of a drug of abuse. However, a motion for acquittal may only be granted by a trial court if the evidence is insufficient to sustain a conviction. Thompkins, supra, at 386.
 {¶ 69} Appellant was charged with operating a vehicle "under the influence of alcohol, a drug of abuse, or a combination of them."[3]
This provision of the Columbus City Code is disjunctive. The City is not specifically required to introduce evidence that appellant was only under the influence of a drug of abuse. In criminal prosecution based upon a law that includes a disjunctive set of elements, the government is merely required to prove at trial one of the elements beyond a reasonable doubt. See, generally, Stanton v. State Tax Commission of Ohio (1927),29 Ohio App. 198, 203; Robbins v. State (1857), 8 Ohio St. 131, 176. The testimony presented at trial was sufficient to support the jury's conclusion that appellant operated his vehicle while under the influence of alcohol.
 {¶ 70} Because the evidence introduced at trial was sufficient to support appellant's conviction for operating a vehicle under the influence, the trial court did not err by overruling appellant's motion to acquit pursuant to Crim.R. 29(A). For all of the foregoing reasons, appellant's fifth assignment of error is overruled.
 {¶ 71} Nevertheless, even though a conviction may be supported by sufficient evidence, it may still be reversed as being against the manifest weight of the evidence. Thompkins, supra, at 387. In reviewing a manifest weight challenge, the court of appeals sits as a "thirteenth juror" and, after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215,485 N.E.2d 717. See, also, Columbus v. Henry (1995), 105 Ohio App.3d 545,547-548, 664 N.E.2d 622. Finally, reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most "exceptional case in which the evidence weighs heavily against the conviction." Thompkins, supra, at 387.
 {¶ 72} Appellant asserts that the testimony of police officers was so inconsistent as to manifestly weigh against the conviction. Appellant asserts that Ward and Gilbert offered inconsistent testimony with respect to appellant's sobriety and what kind of chemical test should have been administered to appellant. Additionally, appellant asserts that the testimony of Woodfork on whether appellant was under the influence and whether appellant operated his vehicle without turning on his headlights conflicted with the testimony of the police officers.
 {¶ 73} However, "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly, such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236. In the instant case, it was within the province of the jury to evaluate the credibility of the witnesses, and to determine what weight to give to any inconsistencies in the testimony. See State v.Lakes (1964), 120 Ohio App. 213, 217, 29 O.O.2d 12, 201 N.E.2d 809. ("It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness.") See, also, State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387. The testimony of Officers Ward and Gilbert was, in fact, conflicting with respect to what chemical test Officer Gilbert wanted to administer at the jail. Additionally, the testimony of Woodfork regarding whether appellant was under the influence conflicted with the testimony of the police officers. However, the testimony between Officers Ward and Gilbert and between the police officers and Woodfork, whether consistent or conflicting, is an issue of credibility. We note that the testimony of Ward and Gilbert was consistent in several respects, particularly with most of their observations of the behavior of appellant. Thus, since a determination of credibility is well within the province of a jury, we do not believe the conflicts in this case manifestly weigh against the evidence.
 {¶ 74} Upon a review of the record, and after weighing all of the evidence presented at trial, and considering all reasonable inferences, as well as the credibility of the witnesses, we find that neither the court nor the jury lost its way so as to create a miscarriage of justice. Thompkins, supra, at 387. Accordingly, appellant's convictions were not against the manifest weight of the evidence, and his seventh assignment of error is overruled.
 {¶ 75} Having overruled all of appellant's assignments of error, we affirm the judgment of the Franklin County Municipal Court.
Judgment affirmed.
Klatt and Christley, JJ., concurs.
Christley, J., retired of the Eleventh Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Evidence of a refusal to submit to a chemical test violates neither an individual's Fifth Amendment privilege against self-incrimination, nor an individual's Fourteenth Amendment right to due process. See Maumee,
supra, at 342; see, also, South Dakota v. Neville (1983), 459 U.S. 553,103 S.Ct. 916, 74 L.Ed.2d 748.
[2] Appellant's fourth assignment of error is only directed toward Gilbert's testimony on the report as the Alcohol Influence Report was properly not admitted into evidence.
[3] We note that the jury was called upon to determine that appellant operated a vehicle either under the influence of alcohol or under the influence of a drug of abuse. The specific instruction called upon the jury to determine whether "the defendant operated a vehicle while under the influence of alcohol and/or a drug of abuse."