[Cite as *State v. Koudelka*, 2020-Ohio-1199.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellee

v.

MARIO KOUDELKA

    Appellant

C.A. No.     19CA0033-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    18CR0255

DECISION AND JOURNAL ENTRY

Dated: March 31, 2020

SCHAFER, Judge.

{¶1} Defendant-Appellant, Mario Koudelka appeals his convictions in the Medina County Court of Common Pleas. We affirm.

I.

{¶2} Koudelka is the father of G.K. Koudelka and G.K.'s mother ("Mother") were divorced in 2005, and Koudelka was ordered to pay child support. In 2006, Mother agreed with Koudelka to lower his child support amount. From February 1, 2012, through January 31, 2014, Koudelka paid no child support. From February 1, 2014, through January 31, 2016, Koudelka's nephew made one payment on Koudelka's behalf sufficient to cover just over four weeks of child support. From February 1, 2016, through January 31, 2018, someone other than Koudelka made one payment sufficient to cover less than three weeks of child support.

{¶3} On February 28, 2018, the Medina County Grand Jury indicted Koudelka on three counts of nonsupport of dependents in violation of former R.C. 2919.21(B), felonies of the fifth

degree. Koudelka entered a plea of not guilty at his arraignment, and the matter proceeded through the pretrial process. Following trial, a jury found him guilty of all three counts. The trial court accepted the jury's verdicts and entered sentence.

{¶4} Koudelka filed this timely appeal, raising three assignments of error for our review.

II.

### Assignment of Error I

**The trial court erred when it ruled that [sufficient] evidence existed to send the case to the jury.**

{¶5} In his first assignment of error, Koudelka contends that the trial court erred when it found there was sufficient evidence to send the matter to the jury[1]. We disagree.

{¶6} A challenge to the sufficiency of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

---

[1] We note that a review of the record shows that although the trial court found both at the conclusion of the State's case and at the conclusion of all evidence, that there was sufficient evidence to send the matter to the jury, Koudelka never made a Crim.R. 29 motion at trial. Regardless, Koudelka contends in this assignment of error that his "convictions were not supported by sufficient evidence," and this Court has recognized that a Crim.R. 29 motion is not required to preserve the issue of sufficiency for appeal. *State v. Good*, 9th Dist. Wayne Nos. 10CA0056, 10CA0057, 2011-Ohio-5077, ¶ 26.

{¶7}    Koudelka was convicted of violating former R.C. 2919.21(B), which stated that "[n]o person shall abandon, or fail to provide support as established by a court order to, another person whom, by court order or decree, the person * * * is legally obligated to support."  "[I]f the offender has failed to provide support * * * for a total accumulated period of twenty-six weeks out of one hundred four consecutive weeks, whether or not the twenty-six weeks were consecutive, then a violation * * * is a felony of the fifth degree."  R.C. 2919.21(G)(1).  The Supreme Court of Ohio has held that the State is required to prove that a defendant was reckless in his or her failure to provide support pursuant to R.C. 2919.21.  *State v. Collins*, 89 Ohio St.3d 524, 530 (2000).

{¶8}    On appeal, Koudelka does not dispute the existence of the child support order or his nonpayment, but does assert that the State failed to show his nonpayment was reckless.  We disagree.

> A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature.  A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that the circumstances are likely to exist.

Former R.C. 2901.22(C).  "[R]ecklessness can be inferred from the fact that [a defendant] knew he was obligated to support his son, but knowingly failed to do so."  *State v. Carter*, 10th Dist. Franklin No. 07AP-141, 2007-Ohio-6502, ¶ 15, citing *Collins* at 530.  In *Collins*, the Supreme Court of Ohio explained:

> Where, after notice and opportunity to be heard, a court order is issued mandating a person to submit child support payments to a specific agency of government, and that agency shows no record of any payments having been received from that person over a period of many years, a circumstantial inference arises that the person was aware of the obligation to pay and yet did not do so.  Payment in accordance with such an obligation is an either-or proposition—the obligor either takes intentional actions to pay, or does not.  Where no payments reach the agency over a period of many years, it may be inferred that the obligor took no action to ensure payment, and, in fact, intended not to pay.  Accordingly, where no evidence is presented to counter that inference, such as evidence of mistake or misdirected

payments, a jury has evidence before it sufficient to establish a culpable mental state of at least recklessness, beyond a reasonable doubt.

*Collins* at 530.

{¶9} In this case, the prosecution presented testimony from Mother and Child Support Enforcement Officer Kelly Grim. The prosecution also offered into evidence several letters sent by Koudelka to Mother, Koudelka's child support payment history report from the Ohio Department of Job and Family Services, an agreed entry for modification of child support entered in the Medina County Domestic Relations court by Koudelka and Mother, and a judgment entry filed in the Medina County Domestic Relations Court in 2008 finding Koudelka in contempt for failing to pay child support.

{¶10} Officer Grim testified that she is a support officer at the Medina County Child Support Enforcement Agency. She stated that her duties as a support officer include administratively enforcing child support orders, locating absent parents, adjusting support orders, and establishing paternity and support orders. Officer Grim testified that the Medina County Domestic Relations Court ordered Koudelka to pay child support to Mother for G.K. as part of their divorce. Officer Grim further testified that the domestic relations court found Koudelka in contempt for failure to pay child support as previously ordered in July 2008, and ordered Koudelka to serve four days in the Medina County jail. Officer Grim stated that during the time periods relevant to the indictment, Koudelka failed to make payments for all 104 weeks between February 1, 2012, and January 31, 2014; failed to make payments for 99 of 104 weeks between February 1, 2014, and January 31, 2016; and failed to make payments for 101 out of 104 weeks between February 1, 2016, and January 31, 2018. Koudelka's child support payment history report from the Ohio Department of Job and Family Services supports Officer's Grim's testimony.

{¶11} Officer Grim further testified that the Medina County Child Support Agency received a letter from Koudelka in January of 2014. A review of the letter shows that Koudelka requested the agency send "all CSEA related information" to a particular address, including his case number, Mother's contact information, and the total amount owed. The letter also mentions a desire to "resolve the CSEA related matters as soon as possible" and also that he "would like to adjust the payments if possible."

{¶12} Mother testified that she received three letters from Koudelka in 2015. A review of the letters shows that two acknowledge his child support obligation. In the first letter, Koudelka offered to voluntarily relinquish his parental rights in exchange for Mother "drop[ping] the support order and all back-pay." Additionally, in the third letter, Koudelka purports to give Mother the choice between Koudelka seeking full custody of G.K. or agreeing to his proposition in the first letter.

{¶13} Based on this evidence, it may be inferred that Koudelka knew of his support obligation, but took no action to ensure payment and, in fact, intended not to pay. *See Collins*, 89 Ohio St.3d at 530. Koudelka acknowledged that he knew about his obligation to provide child support to G.K. and acknowledged that he failed to meet that obligation. Therefore, after reviewing the record and considering the evidence in a light most favorable to the prosecution, we conclude that the State presented sufficient evidence to show that Koudelka was reckless. Koudelka's first assignment of error is overruled.

### Assignment of Error II

**[Koudelka]'s convictions are against the manifest weight of the evidence.**

{¶14} In his second assignment of error, Koudelka contends that his convictions are against the manifest weight of the evidence because the evidence proved he was not reckless.

Specifically, Koudelka argues that the evidence presented at trial proved he was not reckless in failing to provide child support to G.K because his "attempts to find employment throughout the period proves that he made significant efforts to abide by the court order."

{¶15} To determine whether a criminal conviction is against the manifest weight of the evidence, we "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting Black's Law Dictionary (6th Ed.1990). Nonetheless, "[a]n appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases." *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340. "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5.

{¶16} Koudelka testified on his own behalf, and a review of the trial transcript shows that his testimony during direct examination was often vague and convoluted. Koudelka testified that during the time periods relevant to the indictment, he was unemployed and alternated between living with relatives and being homelessness. He testified that he did not pay child support for G.K. because he could not find work. However, Koudelka also acknowledged during cross

examination that he had a bachelor's degree in sociology, could walk, talk, read, write, bathe himself, feed himself, and probably run a cash register if trained.

{¶17} Koudelka testified that the only employment he had during the relevant time periods was when he worked for "a couple of months" in 2012 as a teacher in China. Despite this employment, Koudelka acknowledged that he did not pay child support during that time, and stated he "didn't have much money because [he] was having to pay them back. They were giving me advances and stuff. I was just getting caught - - getting back on my feet so I didn't really have any money."

{¶18} Koudelka then testified that he was forced to leave his job in China due to visa issues he could not explain because they were "complicated." Upon his return to the United States in November 2012, he moved into his nephew's home in Fort Wayne, Indiana. Koudelka stated that while living with his nephew, he applied for "anything [he] could find" on the internet. Koudelka could not remember how long he lived with his nephew, but stated he eventually left and went to a homeless shelter. He also could not remember how long he was at the shelter, but stated he "was there long enough." He testified that he attempted to look for a job while at the shelter, but surmised he did not get a job because of the stigma of being homeless. At some point he returned to his nephew's home for an uncertain period of time, and then left again. Later in his testimony he clarified that he lived in Fort Wayne from 2012-2014.

{¶19} Koudelka stated that after sleeping outside one night, he contacted his mother, who sent him money to buy a bus ticket to Ohio. Koudelka testified that he lived with his mother in Medina after returning to Ohio, but could not remember how long he stayed with her, just that "it was not long enough to be able to find work." He eventually left her home and went to a homeless shelter in Akron.

{¶20} Koudelka testified that he ultimately went to Texas to live with his aunt. He stated that he was in Texas for about a month and a half to two months before he was arrested on a warrant related to this case. He stated he "was on the path to lock in two jobs" when he was arrested. Later in his testimony he implied he had already been offered a job, but lost it because he was arrested for the charges in this matter.

{¶21} During cross-examination, the State questioned Koudelka regarding the timeline of events he discussed during direct examination. The prosecutor first asked Koudelka about the letter he sent to the Medina County Child Support Agency received a letter in January of 2014. In addition to requesting information from the agency, Koudelka indicated in his letter that he had been abroad for the previous five years. He stated that had been "trying to make money overseas," but "did not make sufficient money to live and to pay [his] monthly child support payments." The prosecutor noted that Koudelka's previous testimony that he was in Fort Wayne from 2012-2014 was inconsistent with his letter to the agency. The prosecutor reasoned that if the statement in the letter were to be believed, Koudelka would have been "overseas" from 2009-2014. Though initially evasive, Koudelka eventually acknowledged that his statement in the letter was inaccurate and that he was in Fort Wayne from 2012-2014. When asked why he wrote that he was trying to make money overseas when he was not, in fact, overseas, Koudelka stated, "Because I was in communication with some employers and my old boss - - and bosses and clients."

{¶22} Next, the prosecutor questioned Koudelka about the employment and address information he provided to the child support enforcement agency in May of 2016. On a document signed by Koudelka and dated May 20, 2016, Koudelka stated, "I do not work in the U.S." and indicated that he had "[t]he same employment." Koudelka listed his employer as the "Kang Cheol-Su Institute, South Korea" and his address as "Mansu-dong, South Korea, Yeosu City." However,

when questioned by the prosecutor, Koudelka acknowledged that his statements to the agency were not correct and that he was not in fact living in South Korea in May 2016. Additionally, when the prosecutor asked why he had specifically told the child support enforcement agency that he was employed in South Korea when he was not, he stated "Yeah, because I would if I was able to go over there."

{¶23} Koudelka maintained throughout his testimony that he did not pay child support because he was unemployed and homeless. However, he acknowledged that he could walk, talk, read, write, bathe himself, feed himself, and probably run a cash register if trained. Additionally, while discussing the period relevant to the second indictment, the prosecution specifically asked Koudelka, "What prevented you from getting a job?" To which Koudelka responded, "Nothing prevented me. It was like eating or not."

{¶24} Based on all of the evidence outlined above and in the first assignment of error, we cannot say that this is the exceptional case where the jury clearly lost its way and created a manifest miscarriage of justice. It is possible based on the evidence presented at trial that the jury in this case simply did not find Koudelka's testimony credible. At times Koudelka's testimony was vague, convoluted, and evasive, and the prosecution was able to show inconsistencies between his testimony and information he had previously provided to the child support enforcement agency. "This Court has repeatedly held that the trier of fact is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly." *State v. Johnson*, 9th Dist. Summit No. 25161, 2010-Ohio-3296, ¶ 15. "'[T]he jury is free to believe all, part, or none of the testimony of each witness.'" *State v. Clark*, 9th Dist. Wayne No. 14AP0002, 2015-Ohio-2978, ¶ 24, quoting *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35.

{¶25} Koudelka's second assignment of error is overruled.

## Assignment of Error III

**[Koudelka] proved the affirmative defense set forth in R.C. 2919.21(D) by a preponderance of the evidence.**

{¶26} In his third assignment of error, Koudelka argues that he proved the affirmative defense set forth in R.C. 2919.21(D). We disagree.

{¶27} R.C. 2919.21(D) provides:

It is an affirmative defense to a charge of * * * failure to provide support established by a court order under division (B) of this section that the accused was unable to provide adequate support or the established support but did provide the support that was within the accused's ability and means.

"The defendant in a nonsupport proceeding is presumed to have the ability to support the child unless he raises the affirmative defense of inability to pay." *State v. Roders*, 9th Dist. Summit No. 20962, 2002-Ohio-3867, ¶ 16, citing *State v. Risner*, 120 Ohio App.3d 571, 574 (3d Dist.1997). "The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense * * * is upon the accused." R.C. 2901.05(A). To succeed on the affirmative defense contained in R.C. 2919.21(D), "the accused must prove, by a preponderance of the evidence that: (1) he is unable to provide adequate or the court-ordered support; and (2) he did provide such support as was within his ability and means." *Roders* at ¶ 16. "'Lack of means alone cannot excuse lack of effort[.]'" *Id.* quoting *State v. Brown*, 5 Ohio App.3d 220, 222 (5th Dist.1982).

{¶28} Koudelka maintained throughout trial that he was unable to provide G.K. with support because he was unemployed and homeless. However, there was no evidence presented in this case that Koudelka ever made any attempt to support his child. Although he testified that he was employed for a short time during the relevant time period, he acknowledged that he did not

pay child support for G.K. Koudelka also testified that he did not make either of the two payments made to the child support enforcement agency during the relevant time period.

{¶29} Moreover, Koudelka never asserted that he had any medical or mental health issues that prevented him from working and acknowledged that he had a bachelor's degree in sociology, could walk, talk, read, write, bathe himself, feed himself, and probably run a cash register if trained. With the exception of the stigma of being homeless—which could not explain his unemployment during time he lived with family—Koudelka did not offer any other reason for his unemployment. Although he asserted that he attempted to find employment, he did not offer any evidence other than his testimony to prove it. *See* R.C. 2901.05 ("The burden of going forward with the evidence of an affirmative defense * * * is upon the accused.").

{¶30} After reviewing the evidence admitted at trial, we conclude that the jury did not err by concluding Koudelka did not prove his claim that he was entitled to the affirmative defense provided by R.C. 2919.21(D). The jury may have determined, based on the evidence discussed above, that Koudelka had not put his best effort into finding employment and had thus, failed to prove he was unable to provide adequate support or that he provided any support within his ability and means. *See Roders*, 2002-Ohio-3867, at ¶ 16, citing *Brown*, 5 Ohio App.3d at 222 ("'Lack of means alone cannot excuse lack of effort[.]'").

{¶31} Koudelka's third assignment of error is overruled.

III.

{¶32} Koudelka's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CARR, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

JEREMY SAMUELS, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.