[Cite as *State v. Slaughter*, 2026-Ohio-1291.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 25AP-255 (C.P.C. No. 18CR-0992) |
| v. | : | (REGULAR CALENDAR) |
| Lashawn M. Slaughter, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on April 9, 2026

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Brendan Inscho* for appellee. **Argued:** *Brendan M. Inscho*.

**On brief:** *Colin Peters Law, LLC*, and *Colin E. Peters* for appellant. **Argued:** *Colin E. Peters*.

APPEAL from the Franklin County Court of Common Pleas

MENTEL, J.

{¶ 1} Defendant-appellant, Lawshawn M. Slaughter,[1] appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of two counts of nonsupport of dependents, both felonies of the fifth degree. For the following reasons, we affirm.

I. Facts and Procedural History

{¶ 2} On February 28, 2018, plaintiff-appellee, the State of Ohio, indicted appellant on two counts of nonsupport of dependents, in violation of R.C. 2919.21. The first count alleged appellant recklessly abandoned or failed to provide adequate support to his child,

---

[1] By the time of trial, Lashawn M. Slaughter had changed his name to Maurice Walker. (Tr. at 6.) We will refer to the former Mr. Slaughter as "appellant" throughout this decision.

A.C., and/or recklessly abandoned or failed to provide support as established by a court order to A.C., from February 21, 2014 to February 21, 2016. (Indictment.) The second count alleged appellant recklessly abandoned or failed to provide adequate support to A.C., and/or recklessly abandoned or failed to provide support as established by a court order to A.C., from February 22, 2016 to February 22, 2018. Both counts alleged appellant failed to provide support for a total accumulated period of 26 weeks out of 104 consecutive weeks. Appellant pled not guilty to the charges, and the matter proceeded to trial.

{¶ 3} The evidence presented at trial demonstrated that, in 2010, the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, issued an order requiring appellant to pay child support for A.C. The order obligated appellant to pay child support in the amount of $354.44 per month for any time private health insurance was in effect, or in the amount of $332.58 per month plus a cash medical order of $64.58 per month for any time private health insurance was not in effect. Records from the Franklin County Child Support Enforcement Agency ("FCCSEA") demonstrated appellant did not make a single payment toward his child support obligation from February 2014 through February 2018. (State's Ex. B.)

{¶ 4} The state presented testimony from two witnesses at trial: Latisha Carter ("mother"), the mother of A.C., and Jill Rodman, a FCCSEA client affairs officer. Mother explained she and appellant have one child together, A.C., born October 13, 2003. Mother stated both she and appellant "went to court" in 2010, resulting in the order directing appellant to pay child support for A.C. (Tr. at 99.) Mother affirmed appellant was aware of his obligation to pay child support. Mother stated she never received any child support payments.

{¶ 5} Mother testified she had full custody of A.C. throughout his childhood. She noted that from 2014 to 2018 she bought A.C. groceries, clothes, school supplies, and equipment for the sports he played. Mother also stated she rented a home from 2014 to 2018 and was responsible for paying the utilities. Mother stated appellant contributed "[z]ero" towards the expenses she incurred while raising A.C. (Tr. at 103.) Mother affirmed that she lived with appellant before A.C. was born but stated she did not live with appellant at any time from 2014 to 2018.

{¶ 6} Mother acknowledged appellant and A.C. had a relationship and noted that A.C. "[o]ccassionally" spent time with appellant. (Tr. at 101.) Mother affirmed appellant bought things for A.C., explaining "[i]t wasn't really a lot, it was like maybe a toy here and there or a pair of shoes." (Tr. at 105.) Mother noted appellant did not buy items for A.C. consistently. Mother stated appellant was "there for [A.C.] when he wanted to be, but not for when [A.C.] needed him to be." (Tr. at 107.)

{¶ 7} Ms. Rodman identified State's Exhibit A as the 2010 court entry establishing appellant's obligation to pay child support. Ms. Rodman identified State's Exhibit B as appellant's history of child support payments to FCCSEA from February 2014 to February 2018. Reviewing State's Exhibit B, Ms. Rodman affirmed that appellant did not make a single payment, in any amount, toward his child support obligation from February 2014 to February 2018.

{¶ 8} Appellant testified in his own defense at trial. Appellant acknowledged there was a court order directing him to pay child support for A.C. and explained he did not pay any child support because he "didn't have a job." (Tr. at 148, 152.) Appellant testified he provided A.C. support in other ways, noting he talked to A.C. when "his first girlfriend dumped him," he bought A.C. clothes and meals, and that A.C. went on trips with him. (Tr. at 148-149.) Appellant did not make a record of any of the support he provided A.C. because he "[d]idn't know it was required." (Tr. at 151.) Appellant claimed that mother and A.C. lived with him from 2014 to 2018. (Tr. at 147, 149.) Appellant stated he never abandoned A.C.

{¶ 9} The jury returned a verdict finding appellant guilty of both counts charged in the indictment. The trial court sentenced appellant to a 5-year term of community control and ordered appellant to pay his child support arrearage in the amount of $55,483.76 to FCCSEA.

## II. Assignments of Error

{¶ 10} Appellant appeals, assigning the following errors for our review:

**Assignment of Error No. 1**
There was insufficient evidence to support the element of abandonment, in violation of Due Process as guaranteed by the Fourteenth Amendment to the United States Constitution and article 1, section 10 of the Ohio Constitution.

**Assignment of Error No. 2**
The convictions were against the manifest weight of the evidence in violation of Appellant's right to Due Process as guaranteed by the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.

**Assignment of Error No. 3**
The trial court's failure to properly instruct the jury as to the elements of Nonsupport of Dependents and the operation of the affirmative defense prejudiced Appellant and violated his right to due process as guaranteed by the United States and Ohio Constitutions.

**Assignment of Error No. 4**
The State committed prosecutorial misconduct by engaging in character attacks in closing argument, which prejudiced Appellant.

**Assignment of Error No. 5**
Trial counsel was ineffective by failing to object to impermissible evidence, flawed jury instructions, and to improper closing argument by the prosecutor, in violation of Due Process of Law and Effective Assistance of Counsel as Guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

## III.  First Assignment of Error—Insufficient Evidence

{¶ 11} In his first assignment of error, appellant contends there was insufficient evidence to support the element of abandonment in R.C. 2919.21.  Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally adequate to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). A challenge to the sufficiency of a criminal conviction presents a question of law, which we review de novo. *Id.*

{¶ 12} In determining whether the evidence is legally sufficient to support a conviction, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson*, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. An appellate court will not disturb a verdict unless, after viewing the evidence in the light

most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001). In a sufficiency inquiry, reviewing courts do not assess whether the prosecution's evidence is to be believed, but whether, if believed, the evidence supports the conviction. *State v. Yarbrough*, 2002-Ohio-2126, ¶ 79-80. *See State v. Bankston*, 2009-Ohio-754, ¶ 4 (10th Dist.) (stating that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime").

{¶ 13} The state charged appellant with violating R.C. 2919.21(A) and/or (B). R.C. 2919.21(A) provides that "[n]o person shall abandon, or fail to provide adequate support to . . . [t]he person's child who is under age eighteen." R.C. 2919.21(B) provides that "[n]o person shall abandon, or fail to provide adequate support as established by a court order to, another person whom, by court order or decree, the person" is "legally obligated to support." The culpable mental state required to establish a violation of R.C. 2919.21 is recklessness. *State v. Collins*, 89 Ohio St.3d 524, 530 (2000). *See State v. Carter*, 2007-Ohio-6502, ¶ 15, citing *Collins* at 530 (stating that "recklessness can be inferred from the fact that [a defendant] knew he was obligated to support his son, but knowingly failed to do so"). If an offender fails to provide support for a total accumulated period of 26 weeks out of 104 consecutive weeks, then a violation of R.C. 2919.21(A) or (B) is a felony of the fifth degree. R.C. 2919.21(G)(1).

{¶ 14} Although the indictment charged appellant under R.C. 2919.21(A) and/or (B), the court instructed the jury only as to R.C. 2919.21(B). The court instructed the jury they had to find appellant did "recklessly abandon[] or fail to provide support as established by a court order to [A.C.], whom, by court order or decree, the [appellant] was legally obligated to support." (Tr. at 198-199.) The court defined "[a]bandoned" as meaning "to willfully desert or give up with intention to cause a permanent separation." (Tr. at 200.) *Accord State v. McClellan*, 2012-Ohio-6, ¶ 46 (5th Dist.). Appellant notes that, because he maintained a relationship with A.C. throughout A.C.'s life, no rational trier of fact could have found he abandoned A.C. As such, appellant contends the trial court erred by not "grant[ing] a limited dismissal of that element as a basis for the charges." (Appellant's Brief

at 14.)  However, appellant never asked the trial court to dismiss the abandonment element from the charges.  Appellant also did not object to the jury instructions.

{¶ 15} Appellant acknowledges that abandoning A.C. was simply "one of two alternative elements" to establish the crime of nonsupport of dependents.  (Appellant's Brief at 13.)  Indeed, the jury could convict appellant under R.C. 2919.21(B) if they found appellant abandoned A.C. or if they found appellant failed to provide adequate support to A.C. as established by a court order.  During closing argument, the prosecutor noted appellant had violated R.C. 2919.21(B) "if he recklessly abandon[ed] his son or if he failed to provide support as established by the court order.  Both conditions aren't required." (Tr. at 172.)  The state informed the jury it sought to convict appellant under R.C. 2919.21(B) because he "failed to pay any of his court-ordered child support during [the relevant] period of time." (Tr. at 173.)

{¶ 16} In a "criminal prosecution based upon a law that includes a disjunctive set of elements, the government is merely required to prove at trial one of the elements beyond a reasonable doubt." *Columbus v. Dials*, 2005-Ohio-6305, ¶ 69 (10th Dist.).  *Accord State v. Kirby*, 2020-Ohio-4005, ¶ 30 (12th Dist.) (noting that because the "methods of trespass in the aggravated burglary statute—force, stealth, or deception—are written in the disjunctive, therefore the state only needed to prove one of the three methods"); *State v. Frunza*, 2003-Ohio-4809, ¶ 7 (8th Dist.) (stating that "if the evidence supports the verdict under one factual alternative, we need not reverse the conviction simply because the evidence is insufficient to support another").  In *Dials*, the appellant argued he was entitled to an acquittal under Crim.R. 29(A) "because the City failed to present evidence that appellant was operating a vehicle under the influence of a drug of abuse." *Id*. at ¶ 68.  Because the city charged the appellant with "operating a vehicle 'under the influence of alcohol, a drug of abuse, or a combination of them,' " the city was "not specifically required to introduce evidence that appellant was only under the influence of a drug of abuse." *Id*. at ¶ 69.  Accordingly, evidence demonstrating the appellant "operated his vehicle while under the influence of alcohol" was sufficient to support the conviction. *Id*. at ¶ 69.

{¶ 17} Because the elements of R.C. 2919.21(B) are written in the disjunctive, the state only had to establish one of the two alternatives to demonstrate a violation of the statute.  The state's exhibits and the testimony of mother and Ms. Rodman established

appellant was the obligor on a child support order, and that appellant failed to make a single payment toward his child support obligation from February 21, 2014 through February 22, 2018. As such, even if we were to agree with appellant that the evidence was insufficient to establish he abandoned A.C., the evidence was sufficient to support the jury's verdict.[2] *See* Crim.R. 52(A) (providing that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded"). Based on the foregoing, we overrule appellant's first assignment of error.

## IV. Second Assignment of Error—Manifest Weight

{¶ 18} In his second assignment of error, appellant asserts his conviction was against the manifest weight of the evidence. The legal concepts of sufficiency and weight of the evidence are both quantitatively and qualitatively different. *Thompkins*, 78 Ohio St.3d at paragraph two of the syllabus.

{¶ 19} "[T]he criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *State v. Cassell*, 2010-Ohio-1881, ¶ 38 (10th Dist.), citing *State v. Wilson*, 2007-Ohio-2202, ¶ 25. Thus, although there may be sufficient evidence to support a judgment, a court may nevertheless conclude that a judgment is against the manifest weight of the evidence. *Thompkins* at 387. When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* An appellate court should reserve reversal of a conviction as being against the

---

[2] In his reply brief, appellant claims the trial court's failure to dismiss the abandonment element from the charges amounted to reversible error because it was "impossible to know from the verdict whether the jury convicted based on the element of failure to provide support as established by court order, abandonment, or a split-vote with some jurors opting for one or the other." (Reply brief at 4.) Thus, in his reply brief, appellant appears to make a jury-unanimity argument. *See* Crim.R. 31(A) (stating the "verdict shall be unanimous"); *State v. Gardner*, 2008-Ohio-2787, ¶ 48-50. However, this court "generally will not address an argument raised for the first time in a reply brief." *Hadden Co., L.P.A. v. Zweier*, 2016-Ohio-2733, ¶ 15 (10th Dist.), citing *State v. Shedwick*, 2012-Ohio-2270, ¶ 50 (10th Dist.). Additionally, this court " 'rules on assignments of error, not mere arguments." *State v. Hughes*, 2020-Ohio-3382, ¶ 17 (10th Dist.), quoting *Huntington Natl. Bank v. Burda*, 2009-Ohio-1752, ¶ 21 (10th Dist.). *See* App.R. 12(A)(1)(b). Appellant's first assignment of error asserts only that there was insufficient evidence to support the element of abandonment; the assignment of error does not assert a jury-unanimity issue. For the foregoing reasons, we decline to address this argument.

manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 20} In addressing a manifest weight of the evidence argument, we are able to consider the credibility of the witnesses. *State v. Cattledge*, 2010-Ohio-4953, ¶ 6 (10th Dist.). However, in conducting our review, we are guided by the presumption that the jury " 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Accordingly, we afford great deference to the jury's determination of witness credibility. *State v. Redman*, 2011-Ohio-1894, ¶ 26 (10th Dist.), citing *State v. Jennings*, 2009-Ohio-6840, ¶ 55 (10th Dist.). The finder of fact is free to believe "all, part, or none of the testimony of each witness appearing before it." *Cattledge* at ¶ 6, citing *Hill v. Briggs*, 111 Ohio App.3d 405, 412 (10th Dist. 1996).

{¶ 21} Appellant acknowledges there was "no factual dispute about parentage, the existence of a valid child support order, or Appellant's failure to make any payment to the child support agency during the period of time at issue." (Appellant's Brief at 17.) As such, appellant appears to acknowledge the evidence supported his conviction under R.C. 2919.21(B). Although appellant claims there was an "issue for trial" regarding whether he "abandoned his child or failed to provide adequate support" under R.C. 2919.21(A), each count of the indictment charged appellant with violating either R.C. 2919.21(A) or (B). (Appellant's Brief at 17.) Therefore, the state could convict appellant of each count solely by demonstrating he failed to provide support pursuant to a court order under R.C. 2919.21(B).

{¶ 22} Appellant further claims his conviction was against the manifest weight of the evidence because he established the affirmative defense in R.C. 2919.21(D). R.C. 2919.21(D) states it is an affirmative defense to a charge under R.C. 2919.21(A) or (B) "that the accused was unable to provide adequate support or the established support but did provide the support that was within the accused's ability and means."

{¶ 23} The burden of production and the burden of proof for an affirmative defense are upon the accused. R.C. 2901.05(A). The accused must establish an affirmative defense

by a preponderance of the evidence. *Id.* Thus, to establish the R.C. 2919.21(D) affirmative defense, appellant had to establish by a preponderance of the evidence that: (1) he was unable to provide the court-ordered support; and (2) he did provide such support as was within his ability and means. *State v. D.L.B.*, 2017-Ohio-1126, ¶ 13 (10th Dist.). " 'Lack of means alone cannot excuse lack of effort.' " *Id.*, quoting *State v. Brown*, 5 Ohio App.3d 220, 222 (5th Dist. 1982). Other Ohio appellate courts have held that the R.C. 2919.21(D) affirmative defense is inapplicable in situations, such as here, where the defendant fails to make a single payment toward their child support obligation. *See State v. Jones*, 2004-Ohio-4519, ¶ 28 (2d Dist.) (explaining that, because R.C. 2919.21(D) requires the defendant to "provide the support that was within the accused's ability and means," this necessarily "requires some evidence that a modicum of support was provided");[3] *State v. Wiley*, 2014-Ohio-27, ¶ 47 (8th Dist.) (stating that "[w]here, as here, it is undisputed that no child support payments were made, R.C. 2919.21(D) is inapplicable").

{¶ 24} At trial, appellant stated he had taken college courses and was one "semester short of an associate's degree in paralegalism [sic]." (Tr. at 142, 158.) The child support order indicated appellant worked as a paralegal in 2010, and appellant testified he was fired from his most recent paralegal job on July 31, 2024. (State's Ex. A; Tr. at 143.) Appellant confirmed he was an able-bodied person who could work and drive a car. Appellant never testified to having any medical conditions that would prevent him from working.

{¶ 25} Appellant stated that, while he didn't "recall," he "[didn't] think" he was employed from 2014 to 2018. (Tr. at 153.) However, appellant admitted that "during the summer, during those years in question, '14, '15, '16, '17, and '18," he worked side jobs such as "cutting grass and painting houses, [and] power washing." (Tr. at 143, 159-160.) Appellant stated his income "varied" by the side job he performed and that "[s]ometimes [he] did work for just gas money." (Tr. at 160.) Appellant noted he did not keep track of

---

[3] In *Jones*, the court explained that while this result "may seem harsh" because it prevents "an obligor who is so utterly and profoundly destitute that he can provide no support of any kind" from using the affirmative defense, "an obligor can if he is destitute seek relief from the court ordered support obligation he is accused of failing to pay, avoiding potential criminal liability for not paying support." *Jones* at ¶ 29. Ms. Rodman testified that "one time" after the child support order became effective, appellant contacted FCCSEA and "requested a review." (Tr. at 127.) The support officer told appellant they could send him an application to start the review. However, Ms. Rodman stated appellant "wasn't communicating with our agency from that point on afterwards, in regards to this order." (Tr. at 127-128.) Thus, the evidence indicated appellant knew how to contact FCCSEA to request an administrative review of his support obligation.

how much money he made working these side jobs because he was "just focused on getting money to pay bills." (Tr. at 161.) Appellant claimed he did "everything -- anything [he] could to feed [his] family." (Tr. at 160.)

{¶ 26} Appellant also testified that during the 2014 to 2018 timeframe A.C. lived with him, he bought A.C. clothes and meals,[4] and he took A.C. on trips. When the prosecutor asked appellant how he was able to buy items for A.C. while being unemployed, appellant responded stating he "made it happen so [A.C.] was provided for." (Tr. at 153.) When the prosecutor asked appellant why he didn't pay even "a single dollar [towards his child support obligation] to show good faith," appellant responded stating he didn't make any payments because he "didn't have a job." (Tr. at 152.) Appellant claimed he applied for "[d]ozens of jobs weekly" from 2014 to 2018, but he did not present any evidence to corroborate this testimony. (Tr. at 159.) *See State v. Williams*, 2007-Ohio-63, ¶ 42 (5th Dist.).

{¶ 27} Thus, the evidence demonstrated appellant was college-educated, had worked as a paralegal, was able-bodied, and able to drive a car. As such, the evidence demonstrated that appellant had the ability to work and to pay something toward his support order. The jury could reasonably have concluded that appellant did not put his best effort into finding gainful employment from 2014 to 2018. *See State v. Koudelka*, 2020-Ohio-1199, ¶ 29-30 (9th Dist.) (noting the jury could have found the defendant "had not put his best effort into finding employment," where the evidence demonstrated the defendant did not have "any medical or mental health issues that prevented him from working," and "that he had a bachelor's degree in sociology, could walk, talk, read, [and] write").

{¶ 28} Furthermore, appellant admitted to working seasonal side jobs during the timeframe of the indictment, but he did not make even nominal payments toward his child support obligation during this time. Accordingly, the record demonstrated that appellant did not provide the support that was within his ability and means. *See State v. Ziemba*, 2020-Ohio-171, ¶ 16 (9th Dist.) (finding the weight of the evidence did not support the R.C.

---

[4] The items appellant allegedly bought for A.C. were gifts, not support payments. *See* R.C. 3121.45; *State v. Ferguson*, 2012-Ohio-6231, ¶ 14 (10th Dist.), citing R.C. 3121.45 (stating that "the payment of monies and buying of items or providing financial assistance directly to the child instead of the child support enforcement agency is by law deemed a gift and not child support"); *Wiley*, 2014-Ohio-27, ¶ at 48.

2919.21(D) affirmative defense because the obligor had obtained an advanced college degree, started a catering business with a friend, and admitted that "she was able to provide for the needs of herself and her business," yet she "never made a payment toward her child support obligations"); *State v. Davis*, 2014-Ohio-2769, ¶ 25 (8th Dist.) (finding the defendant did not establish the R.C. 2919.21(D) affirmative defense because he "failed to make any payment for 20 months out of a 26-month period, despite earning money during this period," and the defendant "admitted to paying for his own rent, food, and even drug habit during this period").

{¶ 29} After a thorough review, we find that the jury did not lose its way, nor create a manifest miscarriage of justice, by rejecting appellant's affirmative defense and convicting him of two counts of nonsupport of dependents. Accordingly, appellant's conviction was not against the manifest weight of the evidence. Based on the foregoing, we overrule appellant's second assignment of error.

## V. Third Assignment of Error—Jury Instructions

{¶ 30} In his third assignment of error, appellant asserts the trial court failed to properly instruct the jury. "Generally, an appellate court reviews a trial court's jury instructions for an abuse of discretion." *State v. Daylong*, 2021-Ohio-4192, ¶ 57 (10th Dist.), citing *State v. Mankin*, 2020-Ohio-5317, ¶ 33 (10th Dist.). However, "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict." Crim.R. 30(A). Failure to object to the jury instructions waives all but "plain error under Crim.R. 52(B)." *State v. McCown*, 2006-Ohio-6040, ¶ 36 (10th Dist.). Appellant did not object to the jury instructions in the present case. As such, appellant has waived all but plain error.

{¶ 31} Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule." *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Second, to be considered plain, the error asserted "must be an 'obvious' defect in the trial proceedings." *Id.*, citing *State v. Sanders*, 92 Ohio St.3d 245, 257 (2001). Third, the error in question "must have affected substantial rights" by "affect[ing] the outcome of the

trial." *State v. Thomas*, 2017-Ohio-8011, ¶ 33, quoting *Barnes* at 27. In other words, "the accused is 'required to demonstrate a reasonable *probability* that the error resulted in prejudice.' " (Emphasis in original.) *Id.*, quoting *State v. Rogers*, 2015-Ohio-2459, ¶ 22. Therefore, "[a]n error in a jury instruction does not constitute plain error unless, but for the error, the outcome of the trial clear[ly] would have been otherwise." *State v. Stevenson*, 2018-Ohio-5140, ¶ 20 (10th Dist.).

{¶ 32} Even if the accused demonstrates the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it. *Thomas* at ¶ 34. Because Crim.R. 52(B) "states only that a reviewing court 'may' notice plain forfeited errors; a court is not obliged to correct them." *Barnes* at 27. Courts should notice plain error " 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *Barnes* at 27, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶ 33} Appellant initially claims the trial court erred by failing to instruct the jury regarding the elements of both R.C. 2919.21(A) and (B). As noted, the indictment charged appellant with violating R.C. 2919.21(A) and/or (B), but the trial court instructed the jury only regarding R.C. 2919.21(B). (Tr. at 198-99.) Appellant claims the court's failure to instruct the jury regarding R.C. 2919.21(A) prejudiced him with respect to the R.C. 2919.21(D) affirmative defense.

{¶ 34} Regarding the affirmative defense, the court instructed the jury that appellant claimed "he was unable to provide adequate support, [but that he] provided such support as was within [his] ability and means." (Tr. at 200.) Appellant contends the "instruction for the affirmative defense appear[ed] to not squarely address the charge," because the affirmative defense instruction referenced the unable to provide adequate support element of R.C. 2919.21(A), rather than the unable to provide support pursuant to a court order element of R.C. 2919.21(B). (Appellant's Brief at 21.)

{¶ 35} However, there is nothing in the record indicating that the affirmative defense instruction confused the jury. While the affirmative defense instruction referenced an element of R.C. 2919.21(A), the instruction also informed the jury that appellant had to establish he provided the support that was within his ability and means. The evidence overwhelmingly demonstrated that appellant did not pay the support that was within his

ability and means. Moreover, the evidence overwhelmingly supported appellant's conviction under R.C. 2919.21(B). Accordingly, the court's failure to instruct the jury regarding R.C. 2919.21(A) did not prejudice appellant.

{¶ 36} Appellant also claims the trial court failed to adequately instruct the jury regarding "the manner in which the burden of proof shift[ed] only if the jury has found that the State proved the elements of the charge beyond a reasonable doubt." (Appellant's Brief at 22.) The trial court instructed the jury that, even if they found appellant failed to establish the affirmative defense by a preponderance of the evidence, the state still had to prove "beyond a reasonable doubt all the elements of [t]he offense charged before [the jury could] convict the [appellant] of that offense." (Tr. at 201.) The court did not precisely instruct the jury that if they found the state established appellant's guilt beyond a reasonable doubt but they also found appellant established the affirmative defense by a preponderance of the evidence, the jury must return a verdict of not guilty. Appellant claims the absence of such an instruction encouraged the jury "to misapply Appellant's burden of proof relative to the State's." (Appellant's Brief at 23.)

{¶ 37} During closing argument, defense counsel explained to the jury how the affirmative defense should operate in relation to the charges. Defense counsel informed the jury that appellant's "affirmative defense trumps [the state's] entire case. So even if you believe that they have met their burden of proof beyond a reasonable doubt, if you also believe that we have met our burden by a preponderance of the evidence, you're finding must be not guilty." (Tr. at 184.) While the court informed the jury closing arguments were not evidence, the court told the jury that closing arguments were "designed to assist [them]." (Jury Instruction at 2.) Thus, the jury could have relied on defense counsel's explanation regarding how the affirmative defense would operate in relation to the state's burden of proof. Moreover, because appellant did not pay an amount of support that was within his ability and means, the evidence did not support the R.C. 2919.21(D) affirmative defense. As such, the court's failure to provide the jury with a more detailed instruction regarding how the affirmative defense operated in relation to the state's burden of proof did not prejudice appellant. Based on the foregoing, we overrule appellant's third assignment of error.

## VI. Fourth Assignment of Error—Prosecutorial Misconduct

{¶ 38} In his fourth assignment of error, appellant claims the state committed prosecutorial misconduct by engaging in character attacks during closing argument.

{¶ 39} During the state's case-in-chief, the prosecutor asked mother whether she ever knew of appellant to have a job, to drive, and whether she knew of any physical reason appellant could not work. (Tr. at 104.) Mother stated she knew appellant once worked as a paralegal, he had the ability to drive, and that she did not know of any physical condition that would prevent him from working. (Tr. at 104.) The prosecutor then asked mother whether she "ever kn[e]w [appellant] to have any habits back then during 2014 to 2018?" (Tr. at 104.) Mother responded stating she knew appellant "was a smoker and a drinker." (Tr. at 104.) Defense counsel did not object.

{¶ 40} During closing argument, the prosecutor repeatedly referenced the fact that appellant spent money on smoking and drinking. The prosecutor noted that, although appellant claimed he was unemployed during the relevant time frame, he "managed to house himself, feed himself, own and maintain a car, and indulge himself with drinking and smoking, yet he failed to support his son." (Tr. at 173.) The prosecutor again noted that appellant "obviously ha[d] the means to support himself and own and maintain a car, drink alcohol and smoke, but he wants you to believe that in a four-year period, he did not have the means to pay even a single dollar to support his son." (Tr. at 178.) During rebuttal closing argument, the prosecutor again referenced the fact that appellant "had the funds to purchase alcohol and smokes, to own and maintain a car, to house, clothe, and feed himself. Yet he wants you to believe that he did not have the means to pay even a dollar in support of his son." (Tr. at 191-192.) Defense counsel did not object to the prosecutor's comments during closing argument.

{¶ 41} Courts afford prosecutors wide latitude in closing arguments. *State v. Hunt*, 2013-Ohio-5326, ¶ 18 (10th Dist.). During closing argument, a prosecutor may comment freely on what the evidence has shown and what reasonable inferences may be drawn therefrom. *State v. Fudge*, 2018-Ohio-601, ¶ 48 (10th Dist.). The test for prosecutorial misconduct in closing arguments "is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Smith*, 14 Ohio St.3d 13, 14 (1984), citing *United States v. Dorr*, 636 F.2d 117 (5th Cir. 1981). " 'The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the

fairness of the trial, not the culpability of the prosecutor.' " *State v. Wilkerson*, 2002-Ohio-5416, ¶ 38 (10th Dist.), quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982). Thus, prosecutorial misconduct is not grounds for reversal unless the defendant has been denied a fair trial. *State v. Maurer*, 15 Ohio St.3d 239, 266 (1984). Because appellant did not object to the prosecutor's comments during closing argument, he has waived all but plain error. *State v. Daniels*, 2015-Ohio-2649, ¶ 29, citing *State v. Cunningham*, 2004-Ohio-7007, ¶ 82. "Under a plain error standard, a reviewing court asks whether a defendant ' "would not have been convicted in the absence of the improper conduct." ' " *State v. Lipkins*, 2017-Ohio-4085, ¶ 23 (10th Dist.), quoting *State v. Elson*, 2014-Ohio-2498, ¶ 43 (10th Dist.), quoting *State v. Saleh*, 2009-Ohio-1542, ¶ 68 (10th Dist.).

{¶ 42} The trial court also instructed the jury that the evidence "[did] not include the indictment or opening statements or closing arguments of counsel." (Tr. at 195-196.) We presume "that 'the jurors followed these instructions and that the verdict was not, therefore, based on the content of the closing arguments.' " *State v. Nichols*, 2020-Ohio-4362, ¶ 28 (10th Dist.), quoting *Fudge* at ¶ 52.

{¶ 43} Appellant asserts that the prosecutor's repeated references to his smoking and drinking during closing amounted to prejudicial attacks on his character. *See State v. Jamison*, 49 Ohio St.3d 182, 184 (1990) (noting that "[u]nder longstanding principles of Anglo-American jurisprudence, an accused cannot be convicted . . . by proving he . . . is a bad person"). Appellant claims the prosecutor's comments bore no "rational relation to whether [he] had the means or ability to pay child support." (Appellant's Brief at 25.)

{¶ 44} However, the prosecutor's comments were potentially relevant to the R.C. 2919.21(D) affirmative defense. To establish the affirmative defense, appellant had to demonstrate he paid an amount of support that was within his ability and means. The fact appellant spent some amount on smoking and drinking indicated he had the means to pay an amount greater than zero toward his child support obligation. Although the state never introduced evidence regarding how much appellant spent on smoking and drinking, mother's testimony established appellant had the habits of smoking and drinking. A reasonable inference from such evidence was that appellant spent some amount on these habits.

{¶ 45} Moreover, there is no reasonable probability that the outcome of the trial would have been different absent the prosecutor's references to appellant's smoking and drinking during closing argument. The evidence overwhelmingly established appellant's guilt under R.C. 2919.21(B), and the evidence did not support the R.C. 2919.21(D) affirmative defense. As such, the prosecutor's comments during closing argument did not rise to the level of plain error. Based on the foregoing, we overrule appellant's fourth assignment of error.

## VII. Fifth Assignment of Error—Ineffective Assistance of Counsel

{¶ 46} In his fifth assignment of error, appellant asserts his trial counsel rendered constitutionally ineffective assistance by failing to object at various points during the trial.

{¶ 47} To prevail on an ineffective assistance of counsel claim, appellant must satisfy a two-part test. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-42 (1989). "First, the defendant must show that counsel's performance was deficient." *Strickland* at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). To justify a finding of ineffective assistance of counsel, " 'the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' " *State v. Mohamed*, 2017-Ohio-7468, ¶ 18, quoting *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). *Accord State v. Cepec*, 2016-Ohio-8076, ¶ 111, quoting *State v. Leonard*, 2004-Ohio-6235, ¶ 146 (stating that " 'debatable trial tactics do not establish ineffective assistance of counsel' ").

{¶ 48} The second prong of the *Strickland* test requires the defendant to "show that the deficient performance prejudiced the defense." *Strickland* at 687. To establish prejudice, a defendant must demonstrate "that there exists a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *State v. Davis*, 2020-Ohio-309, ¶ 10, citing *Bradley* at paragraphs two and three of the syllabus. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bradley* at 142, quoting *Strickland* at 694. "[T]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial [court] cannot be relied on as having produced a just result." *Strickland* at 686.

{¶ 49} The failure to demonstrate either prong of the *Strickland* test defeats a claim of ineffective assistance of counsel. *State v. Kennard*, 2016-Ohio-2811, ¶ 14 (10th Dist.), citing *Bradley* at 143. Therefore, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland* at 697.

{¶ 50} Appellant initially claims, relying solely on the arguments set forth in this third and fourth assignments of error, that his counsel rendered ineffective assistance by failing to object to the jury instructions and to the prosecutor's comments during closing argument. (Appellant's Brief at 27.) In our analysis of appellant's third and fourth assignments of error, however, we determined appellant failed to demonstrate plain error with respect to either the jury instructions or the prosecutor's comments during closing argument. " '[W]here the failure to object does not constitute plain error, the issue cannot be reversed by claiming ineffective assistance of counsel.' " *State v. Roy*, 2014-Ohio-4587, ¶ 20 (10th Dist.), quoting *State v. Carson*, 2006-Ohio-2440, ¶ 51 (10th Dist.). *See State v. Rogers*, 2015-Ohio-2459, ¶ 22 (explaining that plain error review employs "the same deferential standard for reviewing ineffective assistance of counsel claims"). Accordingly, neither counsel's failure to object to the jury instructions nor to the prosecutor's comments during closing argument amounted to ineffective assistance of counsel.

{¶ 51} Appellant further asserts his trial counsel rendered ineffective assistance by failing to object when the prosecutor asked mother whether appellant had any habits. (Appellant's Brief at 27.) As noted, mother responded stating that she knew appellant "was a smoker and a drinker." (Tr. at 104.) Appellant contends the evidence regarding his smoking and drinking habits was either irrelevant, or that any potential relevance was substantially outweighed by the risk of unfair prejudice. (Appellant's Brief at 28.) *See* Evid.R. 401, 402, 403(A).

{¶ 52} Evidence demonstrating that appellant had the habits of smoking and drinking was not, on its own, relevant to the present case. However, the fact appellant spent money on his smoking and drinking habits was relevant to the R.C. 2919.21(D) affirmative defense, because such evidence demonstrated appellant had the means to pay more than zero toward his child support obligation. Yet, the prosecutor never asked mother or appellant how much appellant spent on his smoking and drinking habits. Thus, while the

question regarding appellant's habits may have been improper in isolation, the question *could* have been proper if the state asked additional questions regarding how much appellant spent on these habits.

{¶ 53} Regardless, appellant fails to identify any prejudice resulting from defense counsel's failure to object to the prosecutor's question. "A trial counsel's failure to object to testimony does not amount to ineffective assistance of counsel unless the defendant can demonstrate a reasonable probability that, but for his counsel's failure to object, the result of the proceedings would have been different." *State v. Thompson*, 2019-Ohio-2525, ¶ 15 (10th Dist.), citing *State v. Watts*, 2016-Ohio-5386, ¶ 42 (10th Dist.). Because there was ample evidence establishing appellant's guilt under R.C. 2919.21(B), and an absence of evidence to support the affirmative defense under R.C. 2919.21(D), there was no reasonable probability that the outcome of the trial would have differed if counsel objected to the question regarding appellant's habits. As such, counsel's failure to object did not amount to ineffective assistance of counsel. Based on the foregoing, we overrule appellant's fifth assignment of error.

## VIII. Conclusion

{¶ 54} Having overruled appellant's first, second, third, fourth, and fifth assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BEATTY BLUNT and EDELSTEIN, JJ., concur.

————————————